IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ERIC L. YOHE,

        Plaintiff,

vs.                                    Case No. 10-1396-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

        Defendant.


MEMORANDUM AND ORDER

    This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits.  The matter has been fully briefed by the parties.

**I.  General legal standards**

    The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the
national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential
evaluation process to determine disability.  If at any step a
finding of disability or non-disability can be made, the
Commissioner will not review the claim further.  At step one, the
agency will find non-disability unless the claimant can show that
he or she is not working at a "substantial gainful activity."  At
step two, the agency will find non-disability unless the claimant
shows that he or she has a "severe impairment," which is defined
as any "impairment or combination of impairments which
significantly limits [the claimant's] physical or mental ability
to do basic work activities."  At step three, the agency
determines whether the impairment which enabled the claimant to
survive step two is on the list of impairments presumed severe
enough to render one disabled.  If the claimant's impairment does
not meet or equal a listed impairment, the inquiry proceeds to
step four, at which the agency assesses whether the claimant can
do his or her previous work; unless the claimant shows that he or
she cannot perform their previous work, they are determined not
to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir.
1993). At step five, the burden shifts to the Commissioner to
show that the claimant can perform other work that exists in the
national economy. Nielson, 992 F.2d at 1120; Thompson v.
Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner
meets this burden if the decision is supported by substantial
evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC). This
RFC assessment is used to evaluate the claim at both step four
and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g);
416.920(a)(4), 416.920(e,f,g).

## II. History of case

On June 29, 2009, administrative law judge (ALJ) Evelyn M.
Gunn issued her decision (R. at 10-19). Plaintiff alleges that
he has been disabled since April 27, 2005 (R. at 10). Plaintiff
is insured for disability insurance benefits through March 31,
2010 (R. at 12). At step one, the ALJ found that plaintiff has
not engaged in substantial gainful activity since April 27, 2005,
his alleged onset date (R. at 12). At step two, the ALJ found
that plaintiff had the following severe impairments: degenerative

4

disc disorder (DDD) of the lumbar spine, and status post lumbar fusion surgery (R. at 12).   At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 13).   After determining plaintiff's RFC (R. at 13), the ALJ determined at step four that plaintiff was unable to perform past relevant work (R. at 17).   At step five, the ALJ determined that other jobs exist in significant numbers in the national economy that plaintiff could perform (R. at 18). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 19).

### III.  Did the ALJ err in her evaluation of the opinions of Dr. Gollier, plaintiff's treating physician?

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.   The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).   When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports,

5

not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.  Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Dr. Gollier had been plaintiff's treating physician from 2005-2009.  He indicated that he had contact with the patient on May 10, 2005, May 25, 2005, December 20, 2006, May 15, 2007, October 2, 2008, March 20, 2009, and May 12, 2009 (R. at 476). On May 12, 2009, Dr. Gollier filled out a medical source statement-physical indicating that plaintiff had numerous limitations, including an ability to sit for less than 2 hours in an 8 hour workday, and to stand/walk for only 2 hours in an 8 hour workday.  Dr. Gollier also indicated that plaintiff would need to change positions at will from sitting, standing, or walking and would need to lie down 3 times a day for 1 hour in an 8 hour workday (R. at 477-480).  At the hearing, the vocational

7

expert (VE) testified that a person with the limitations set out in Dr. Gollier's report could not work (R. at 64-65).

In his decision, the ALJ stated the following regarding the opinions of Dr. Gollier:

> Although Dr. Gollier submitted a medical source statement that would preclude all work (Exhibit 11F), **Dr. Gollier's treatment notes do not support the severity of these restrictions and are simply based on the claimant's subjective complaints.** Accordingly, the undersigned gives Dr. Gollier's opinions set forth in his medical source statement less weight than Dr. Bailey's opinions that the claimant did exceptionally well following his lumbar fusion surgery, as noted above in detail.[1]

(R. at 17, emphasis added).

---

[1]Dr. Bailey performed lumbar fusion surgery on plaintiff on November 15, 2005 (R. at 244-246).  On March 1, 2006, Dr. Bailey indicated that he was releasing plaintiff to medium heavy work duty of 75 pounds or less (R. at 386).  On April 7, 2006, Dr. Bailey stated the following:

> Mr. Yohe returns to clinic today after his anterior-posterior lumbar fusion. The patient has done exceptionally well throughout this process. He is doing well. He says he barely has any discomfort. He did some physical therapy and work hardening and tested out greater than 100 pounds. He is basically pain free and back to normal function...
>
> At this point, the patient has done exceptionally well. I am very pleased at his outcome. I could not imagine a better outcome in a patient. I am releasing him to regular duty without restrictions.

(R. at 385).  The records do not indicate that Dr. Bailey saw or treated plaintiff after April 2006.

The ALJ discounted the opinions of Dr. Gollier because his
treatment notes "do not support the severity of these
restrictions and are simply based on the claimant's subjective
complaints" (R. at 17).   However, the ALJ failed to mention that
Dr. Gollier's treatment notes from October 2, 2008 include under
his objective findings a poor range of motion, positive straight
leg raising on the left, and a decrease of deep tendon reflexes
on the left.   Dr. Gollier noted under subjective complaints that
plaintiff reported his pain had increased in the last 6 months,
with some numbness (R. at 448).   On March 20, 2009, under
objective findings, Dr. Gollier found that plaintiff had "very
poor mobility" with flexion and extension of the back (R. at
455).   Dr. Gollier's treatment notes thus include at least some
of the criteria for a listed impairment (1.04A, disorders of the
spine; i.e., positive straight leg raising, reflex loss and
limitation of motion of the spine, and/or motor loss (poor range
of motion and very poor mobility with flexion and extension of
the back)).   Dr. Gollier stated that in rendering his opinions,
he relied in part on his review of the patient's records;
furthermore, there is no medical opinion evidence that Dr.
Gollier's treatment records do not support his opinions.

However, an even more serious problem with the ALJ's
analysis is her finding that Dr. Gollier's opinions are "simply
based on claimant's subjective complaints" (R. at 17).   In the

case of <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1121 (10th Cir.

2004), the court held:

> The ALJ also improperly rejected Dr.
> Hjortsvang's opinion based upon his own
> speculative conclusion that the report was
> based only on claimant's subjective
> complaints and was "an act of courtesy to a
> patient." <u>Id</u>. The ALJ had no legal nor
> evidentiary basis for either of these
> findings. Nothing in Dr. Hjortsvang's reports
> indicates he relied only on claimant's
> subjective complaints or that his report was
> merely an act of courtesy. "In choosing to
> reject the treating physician's assessment,
> an ALJ may not make speculative inferences
> from medical reports and may reject a
> treating physician's opinion outright only on
> the basis of contradictory medical evidence
> and *not due to his or her own credibility
> judgments, speculation or lay opinion.*"
> <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1252
> (10th Cir.2002) (quotation omitted; emphasis
> in original). And this court "held years ago
> that an ALJ's assertion that a family doctor
> naturally advocates his patient's cause is
> not a good reason to reject his opinion as a
> treating physician." Id. at 1253.

Subsequently, in the case of <u>Victory v. Barnhart</u>, 121 Fed. Appx.

819 (10th Cir. Feb. 4, 2005), the court held:

> The ALJ's finding that Dr. Covington's
> opinion was based on claimant's own
> subjective report of her symptoms
> impermissibly rests on his speculative,
> unsupported assumption. <u>See</u> <u>Langley</u>, 373 F.3d
> at 1121 (holding that ALJ may not reject a
> treating physician's opinion based on
> speculation). We find no support in the
> record for the ALJ's conclusion. Nothing in
> Dr. Covington's report indicates that he
> based his opinion on claimant's subjective
> complaints, and the ALJ's finding ignores all
> of Dr. Covington's examinations, medical
> tests, and reports. Indeed, the ALJ's

> discussion of Dr. Covington omits entirely
> his March 22, 2001 examination and report.
> His April 3, 2001 statement might well have
> been based on his recent first-hand
> examination and observation of claimant
> during this examination, performed less than
> two weeks earlier, rather than on claimant's
> subjective complaints, as the ALJ speculated.
> See Morales v. Apfel, 225 F.3d 310, 317 (3d
> Cir.2000) (noting that the treating
> physician's opinion may "reflect expert
> judgment based on a continuing observation of
> the patient's condition over a prolonged
> period of time").

121 Fed. Appx. at 823-824.

In his report, Dr. Gollier stated that in making his findings, he relied on the following:

> 1. Personal exam(s) of the patient.
>
> 2. Treating relationship with the patient.
>
> 3. Review of your records for patient.
>
> 4. Credible subjective reports of patient.

(R. at 480).  Thus, the ALJ clearly erred by stating that the opinions of Dr. Gollier were simply based on plaintiff's subjective complaints.  Although Dr. Gollier acknowledged that he did rely on plaintiff's "credible" subjective reports, he also relied on his examination and treatment of the plaintiff, and his review of the treatment records.  As in Langley and Victory, the ALJ in this case improperly rejected the opinions of Dr. Gollier based on the ALJ's own speculative and unsupported conclusion that Dr. Gollier's opinions were based only on plaintiff's subjective complaints.  See Field v. Astrue, Case No. 10-4056-SAC

11

(D. Kan. Aug. 2, 2011; Doc. 25 at 17-19)(ALJ erred by erroneously stating that medical opinions based only or primarily on plaintiff's subjective complaints); Frye v. Astrue, Case No. 10-1251-SAC (D. Kan. July 6, 2011; Doc. 13 at 12-13)(same); Farmer v. Astrue, Case No. 10-1284-SAC (D. Kan. May 25, 2011; Doc. 16 at 10-12)(same); Baker v. Astrue, Case No. 10-1253-SAC (D. Kan. Apr. 20, 2011; Doc. 16 at 10-13)(same); Moore v. Astrue, Case No. 09-2549-SAC (D. Kan. Nov. 30, 2010; Doc. 23 at 9-11)(same); Coleman v. Astrue, Case No. 09-1338-SAC (Nov. 30, 2010; Doc. 20 at 11-13)(same).  For the reasons set forth above, the court finds that substantial evidence does not support the reasons set forth by the ALJ for giving less weight to the opinions of Dr. Gollier. This case shall therefore be remanded in order for the ALJ to determine what weight should be accorded to the opinions of Dr. Gollier in light of all the treatment notes, including those set forth above, and to take into account all of the factors relied on by Dr. Gollier in rendering his opinions.

**IV.  Did the ALJ err in his hypothetical question to the vocational expert (VE)?**

In the ALJ's RFC findings, the ALJ determined that plaintiff would be limited to sedentary work, with some additional limitations, including a limitation that the plaintiff "must have the option to sit or stand at will" (R. at 13).  However, in her hypothetical question to the VE, the ALJ only indicated that

12

plaintiff "would need a sit/stand option" (R. at 63).[2]  Plaintiff
alleges that the ALJ erred by failing to specify in the
hypothetical question the frequency of plaintiff's need to
alternate sitting and standing.

Testimony elicited by hypothetical questions that do not
relate "with precision" all of a claimant's impairments cannot
constitute substantial evidence to support the ALJ's decision.
Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991); Pilcher
v. Astrue, Case No. 09-2083-SAC (D. Kan. July 28, 2010; Doc. 22
at 12).  SSR 96-9p explains the Social Security Administration's
policies regarding the impact of a RFC assessment for less than a
full range of sedentary work.  On the issue of alternating
sitting and standing, it states the following:

> An individual may need to alternate the
> required sitting of sedentary work by
> standing (and, possibly, walking)
> periodically. Where this need cannot be
> accommodated by scheduled breaks and a lunch
> period, the occupational base for a full
> range of unskilled sedentary work will be
> eroded. The extent of the erosion will depend
> on the facts in the case record, such as the
> frequency of the need to alternate sitting
> and standing and the length of time needed to
> stand. **The RFC assessment must be specific as
> to the frequency of the individual's need to
> alternate sitting and standing.**  It may be
> especially useful in these situations to
> consult a vocational resource in order to

---

[2]Contrary to defendant's argument in his brief, nothing in
the hypothetical question to the VE indicates that plaintiff
needed to change or alternate positions "at will" (Doc. 18 at 16,
17).

            determine whether the individual is able to
            make an adjustment to other work.

SSR 96-9p, 1996 WL 374185 at *7 (emphasis added).

     In the case of Armer v. Apfel, 216 F.3d 1086 (table), 2000

WL 743680 (10th Cir. June 9, 2000), the ALJ found that the

claimant was limited to unskilled sedentary work that would allow

him to "change positions from time to time."  2000 WL 743680 at

*2.  The court cited to the language quoted above in SSR 96-9p

and held that the ALJ's finding that the claimant would have to

change positions from time to time was vague and did not comply

with SSR 96-9p.  The court held that the RFC assessment must be

specific as to the frequency of the individual's need to

alternate sitting and standing because the extent of the erosion

of the occupational base will depend on the facts in the case

record, such as the frequency of the need to alternate sitting

and standing and the length of time needed to stand.  The ALJ's

findings also must be specific because the hypothetical questions

submitted to the vocational expert (VE) must state the claimant's

impairments with precision.  Id. at *2-3.

     In the case of Vail v. Barnhart, 84 Fed. Appx. 1, 2-3 (10th

Cir. Nov. 26, 2003), the ALJ had made RFC findings limiting

plaintiff to light work which included a limitation to allow

plaintiff brief changes of position (alternating sitting and

standing).  The court stated as follows:

            Furthermore, if an ALJ finds that a claimant

                                14

> cannot perform the full range of work in a
> particular exertional category, an ALJ's
> description of his findings in his
> hypothetical and in his written decision must
> be particularly precise. For example,
> according to one of the agency's own rulings
> on sedentary labor, the description of an RFC
> in cases in which a claimant can perform less
> than the full range of work "must be specific
> as to the frequency of the individual's need
> to alternate sitting and standing." Social
> Security Ruling 96-9P, 1996 WL 374185
> (S.S.A.) at *7. **Precisely how long a claimant
> can sit without a change in position is also
> relevant to assumptions whether he can
> perform light work.** 20 C.F.R. § 404.1567(b).

84 Fed. Appx. at **4-5 (emphasis added).  The court then held

that the ALJ made a critical omission in his analysis by not

properly defining how often the claimant would need to change

positions.  84 Fed. Appx. at *5.[3]

Finally, in <u>Maynard v. Astrue</u>, 276 Fed. Appx. 726, 731 (10th

Cir. Feb. 16, 2007), the ALJ indicated to the VE that the

claimant needed a sit/stand option.  After quoting the language

of SSR 96-9p, the court held:

> The ALJ's hypothetical does not comply with
> the emphasized language in the foregoing
> quotation because it provided no specifics to
> the VE concerning the frequency of any need
> Mr. Maynard may have to alternate sitting and
> standing and the length of time needed to
> stand. The RFC in the ALJ's hypothetical is
> therefore flawed as it pertains to a

---

[3]In <u>Vail</u>, the VE testified that if a person needed to
alternate sitting and standing as needed, no jobs would be
available to that person.  However, if only brief changes of
position (from sitting to standing) was needed, then there would
be jobs that the person could perform.  84 Fed. Appx. at 2.

15

> sit-stand option, and the VE's response is
> not a reliable basis for analyzing the
> erosion of the unskilled sedentary
> occupational base or the total number of jobs
> Mr. Maynard can perform... .

The regulations and case law are clear that the ALJ must be specific in setting forth the frequency of a claimant's need to alternate between sitting and standing when determining whether plaintiff can perform light or sedentary work.  Furthermore, this specificity must be included in the hypothetical question to the VE.  In the case before the court, as in <u>Maynard</u>, the ALJ only indicated that plaintiff needed a sit/stand option, and the ALJ failed to provide in the hypothetical question any specifics regarding the frequency of plaintiff's need to alternate sitting and standing.  The ALJ failed to include in the hypothetical question to the VE that plaintiff needed to be able to sit and stand "at will," as set forth in the ALJ's RFC findings.[4] Therefore, the RFC in the ALJ's hypothetical question is flawed as it pertains to a sit-stand option, and the VE's response is not a reliable basis for analyzing the erosion of the unskilled sedentary occupational base or the total number of jobs.  On remand, the ALJ's hypothetical question to the VE must relate "with precision" all of a claimant's impairments; furthermore it must include the specific frequency of plaintiff's need to

---

[4]An "at will" limitation clearly provides the requisite specificity required by SSR 96-9p.  <u>Trusty v. Astrue</u>, Case No. 11-4012 (D. Kan. Nov. 22, 2011; Doc. 13 at 12-13 n.3).

alternate sitting and standing in order to determine its impact on plaintiff's ability to perform work in the national economy. Allen v. Astrue, Case No. 09-1271-SAC (D. Kan. July 21, 2010; Doc. 21 at 13-16).

**V.  Should this case be reversed and remanded for further hearing, or reversed for an award of benefits?**

At step five, the burden of proof shifts to the Commissioner to show that the claimant retains sufficient RFC to perform work in the national economy.  Lax v. Astrue, 489 F.3d 1080, 1084 (2007); Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). In light of the errors noted above, the court finds that the Commissioner has failed to meet their burden of demonstrating that the plaintiff retains sufficient RFC to perform work in the national economy.

When a decision of the Commissioner is reversed, it is within the court's discretion to remand either for further administrative proceedings or for an immediate award of benefits. When the defendant has failed to satisfy their burden of proof at step five, and when there has been a long delay as a result of the defendant's erroneous disposition of the proceedings, courts can exercise their discretionary authority to remand for an immediate award of benefits.  Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993).  The defendant is not entitled to adjudicate a case ad infinitum until it correctly applies the

17

proper legal standard and gathers evidence to support its conclusion. Sisco v. United States Dept. of Health & Human Services, 10 F.3d 739, 746 (10th Cir. 1993). A key factor in remanding for further proceedings is whether it would serve a useful purpose or would merely delay the receipt of benefits. Harris v. Secretary of Health & Human Services, 821 F.2d 541, 545 (10th Cir. 1987). Thus, relevant factors to consider are the length of time the matter has been pending, and whether or not, given the available evidence, remand for additional fact-finding would serve any useful purpose, or would merely delay the receipt of benefits. Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir. 2006). The decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits. Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986).

The first issue for the court to consider is the amount of time that the case has been pending. Plaintiff filed his application for disability insurance benefits on December 28, 2006 (R. at 10); therefore, this case has been pending for 5 years.

The second issue for the court to consider is whether a remand would serve any useful purpose, or would merely delay the

18

receipt of benefits.  As noted above, plaintiff's surgeon indicated in April 2006 that he was releasing plaintiff to regular duty without restrictions (R. at 385).  However, Dr. Gollier, plaintiff's treating physician from 2005-2009, opined in 2009 that plaintiff had limitations that would prevent him from working (R. at 476-481).  Thus, there is conflicting medical opinion evidence regarding plaintiff's limitations and ability to work, although the opinions were made at different time periods. Furthermore, it should be noted that Dr. Gollier offered no opinion on the question of whether plaintiff's impairments had already lasted or could be expected to last for at least 12 months or longer (R. at 477).  Given the conflict and ambiguity in the medical source evidence, the court finds that a remand for further fact-finding would clearly serve a useful purpose.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 10th day of January 2012, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge

19